## Jolan L. SMITH

v.

## MAINE EMPLOYMENT SECURITY COMMISSION [1] and Fairchild Semiconductor.

Supreme Judicial Court of Maine.

Argued Jan. 6, 1982.

Decided Feb. 8, 1982.

Donald F. Fontaine, Howard T. Reben (orally), Portland, for plaintiff.

Peter H. Stewart (orally), Susan R. Farnsworth, Susan P. Herman, Asst. Attys. Gen., Augusta, for defendants.

Before McKUSICK, C. J.,* and GODFREY, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

CARTER, Justice.

The Maine Employment Security Commission (Commission) ruled that the plaintiff, Jolan L. Smith, was disqualified from receiving unemployment compensation benefits because she left her employment with Fairchild Semiconductor without good cause attributable to such employment. 26 M.R.S.A. § 1193(1)(A). The Commission's decision was upheld in the Superior Court, Cumberland County, and the plaintiff has appealed. We affirm the judgment.

The plaintiff was a permanent employee with Fairchild until February 1980 when illness forced her to leave. As a permanent employee, she received what she viewed as "excellent" fringe benefits, including life and medical insurance, participation in a

1. The agency has been variously designated in unemployment compensation cases as "State of Maine," "Maine Department of Manpower Affairs," and "Maine Employment Security Commission." Throughout this action, however, it has been referred to as "Maine Employ-

ment Security Commission." To eliminate further confusion, we use that appellation here.

* McKUSICK, C. J., sat at oral argument but did not participate further.

profit sharing plan, paid vacation time, sick time, and holidays, and enrollment in a pension program.

Fairchild rehired the plaintiff in October 1980. However, she voluntarily separated from Fairchild later that month after her foreman told her that she was a temporary employee and, as such, would not be entitled to the fringe benefits she had previously enjoyed as a permanent employee.

On October 27, 1980, the plaintiff filed with the Commission a claim for unemployment compensation benefits. She stated to the Commission deputy that she thought the position she accepted in October 1980 was a permanent one. At this initial proceeding, however, the plaintiff did not say whether or not she was told before she was rehired that she would not be entitled to the benefits she had received before she left Fairchild in February 1980. The deputy concluded that, because she resigned only when she became aware of her temporary employee status, her October separation was voluntary without good cause attributable to the employment, and she was not entitled to unemployment benefits.

The plaintiff seasonably appealed to the Commission appeal tribunal. At the fair hearing,[2] the plaintiff testified that in October 1980,

> when I was recalled, I had my interview with the personnel manager and I was told the job was temporary but I would be getting my full rate of pay. I was receiving when I became ill and had to go on sick leave on LOA in February, 1980. This, of course, left no doubt in my mind at the time. After one week of work, I ask how Thanks … how do Thanksgiving holidays were planned this year. To my shock I was then told by my foreman, "You know temporarily help does not receive holiday pay or, for that matter, anything if it's including raises." He also mentioned he would keep me 4 to 6 more months on this basis. With this knowl-

edge, I told him the following day if I'm not to receive full benefits, you may consider the following week as my separation notice.

Later in the hearing, she expressly stated that she left Fairchild in October only because she did not receive fringe benefits. On this record, the appeal tribunal affirmed the findings of fact and decision of the deputy.

The plaintiff's appeal to the Commission proved unsuccessful when, on January 20, 1981, it affirmed the decision of the appeal tribunal. The plaintiff subsequently commenced a timely action in the Superior Court in which the Commission's conclusion that she is disqualified from receiving unemployment compensation benefits under section 1193(1)(A) was similarly upheld, and she has appealed to this Court.

"We review the administrative record to determine whether there is any competent evidence to support the findings of the Commission. . . . We must also review the Commission's action to determine whether within those findings the Commission has correctly applied the applicable law." *Tobin v. Maine Employment Security Commission*, Me., 420 A.2d 222, 224–25 (1980).

The administrative record before us includes competent evidence to support a finding that the position offered to the plaintiff and accepted by her in October 1980 was a temporary one. Indeed, as we have noted, she testified before the appeal tribunal that she understood this to be true.[3] From this, it may reasonably be concluded that, as a temporary employee, the plaintiff was neither promised nor entitled to the fringe benefits associated with permanent employee status.

At the appeal tribunal hearing, the plaintiff stated that she was promised a "full rate of pay." This testimony, however, does not establish a promise by Fairchild to

---

**2.** Neither the employer nor a representative attended the appeal tribunal hearing.

**3.** The plaintiff had also stated to the deputy that she was told the position would be perma-

nent. Resolution of this conflict in testimony is a matter left to the trier of fact, here, the Commission. *See Harmon v. Emerson*, Me., 425 A.2d 978, 982 (1981).

include fringe benefits as an element of compensation to the plaintiff. Even if the Commission did not construe the term "pay" to unambiguously refer only to the plaintiff's hourly wage, the promise may be viewed as ambiguous because it could identify either the plaintiff's hourly wage alone or the full package of compensation promised to her. Its construction is consequently an issue of fact. *T–M Oil Co., Inc. v. Pasquale,* Me., 388 A.2d 82, 85 (1978). The construction given this term by the Commission is thereby entitled to considerable deference, not only because of the latitude normally afforded the Commission's findings of fact, *Tobin,* 420 A.2d at 224, but because of the body's particular expertise in the area of employment matters. The Commission was therefore entitled to conclude that the plaintiff failed to establish the existence of a promise which would entitle her to the fringe benefits she had previously received as a permanent employee at Fairchild.[4]

The Commission also could conclude on the basis of the plaintiff's own testimony before the appeal tribunal that she left her employ only because Fairchild did not include fringe benefits as part of her compensation. Discontent with her compensation package thus constituted the sole ground for the plaintiff's voluntary separation from Fairchild. It is clear that mere dissatisfaction with wages generally does not constitute "good cause" which would entitle the former employee to unemployment compensation benefits.[5] *Harris v. Daniels,* 263 Ark. 897, 898, 567 S.W.2d 954, 958 (1978); *Toland v. Schneider,* 94 Idaho 556, 557, 494 P.2d 154, 156 (1972); *Tubito v.*

*Levine,* 53 A.D.2d 730, 384 N.Y.S.2d 46, 47 (1976); *Edwards v. Unemployment Compensation Board of Review,* 35 Pa.Commw. Ct. 647, 649, 387 A.2d 510, 511 (1978). Based upon the Commission's finding that the plaintiff left Fairchild only because she was dissatisfied with the wages which were promised to her, the agency correctly concluded that she was disqualified from recovering unemployment compensation benefits under 26 M.R.S.A. § 1193(1)(A) because she separated "voluntarily without good cause attributable to such employment."

The entry is:

Judgment affirmed.

All concurring.

---

**4.** Because we conclude that the Commission did not err in finding that the plaintiff's compensation did not include the fringe benefits, we need not and do not identify the conditions under which changes in the terms of employment made unilaterally by the employer may constitute "good cause" within the meaning of § 1193(1)(A). *Compare LaRose v. Dept. of Employment Security,* —— Vt. ——, 431 A.2d 1240 (1981) *with Jones v. Review Bd. of Ind. Employment Security Div.,* —— Ind.App. ——, 399 N.E.2d 844 (1980). *See generally* Annot., 95 A.L.R.3d 449 (1979).

**5.** Because the record before us includes no evidence of the value of the fringe benefits in relation to the amount of the actual compensation the plaintiff received as a temporary employee, we are not called upon to determine whether there exist quantitative limits to the applicability of this rule and, if so, what those limits are. *Cf. Toland v. Schneider,* 94 Idaho 556, 557, 494 P.2d 154, 156 (1972), disqualifying a claimant who left employment because of dissatisfaction with wages unless those wages were "abnormally low" or "below the prevailing wage paid to other workers similarly employed in the same locale."